Peck, J.
delivered the opinion of the court.
The question raised by the pleadings and proof, is, whether the offspring of the slaves named, born before *547 tbe will, passed by the words in the bequest. It appears the slaves m controversy were born prior to making the will. The case of Rino’s ex’r. vs. Davis and wife, (4 Hen. and Mun. 283,) is, we think, decisive of the construction to be put upon this will. There the question was, whether the term increase carried with it the negroes previously born; but the court agreed in that case, that the terms “future increase” in the will, would have put the case beyond doubt, and would have included only the after born slaves. The word future, (so often repeated) must be taken as having been intentionally and understandingly used by the testator when he was making his will. The estate claimed by the plaintiff was a remainder; now what remainder, it may be asked, after the death of Mrs Marlin? To ascertain this, we are conducted to the property loaned for life, Hannah, Harry and Major. These are given byname, and by number, “my three negroes;” and the conclusion of the clause, “the negroes above stated,” negatives the presumption, that others than those named, were intended to pass in remainder.
The testator must be taken as knowing his property at the time he is making these bequests; the children of Hannah, in being when he gave those named, are not of tbe life estate; and how .shall they be, by any construction, made part of the remainder over? We find a bequest in the will, of “Nan and all her children.” If it was intended that the children of Hannah (with the exception of Winney) should pass, why not use the like words as those used in the bequest of Nan? The will is carefully- drawn, and the repetition of the words, “future increase,” added to the fact that previously born children were bequeathed in some instances, is not only persuasive, but conclusive, to show that it was not the intention of the testator to give prior increase with “Hannah, Harry and Major,” given by name. The death of these during the life estate, may *548 produce inequality in the distribution; but we are not to forget that the property was perishable; that it could happen to other of the devisees as well as to complainants. No foresight could guard against the contingency, or anticipate with certainty the length of Mrs Marlin’s life. Be these things as they may, we follow the obvious import of the words used, and accord with the construction given to like words, relating to like property, by able judges of a sister state. The decree must be reversed and bill dismissed.
Bill dismissed.